IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

YANKEES ENTERTAINMENT AND SPORTS
NETWORK, LLC,

    Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY,

    Defendant.

Civil Action No. 22-00622-RGA

MEMORANDUM

Before me is Hartford's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer to the U.S. District Court for the Southern District of New York. (D.I. 10). I have fully considered the parties' briefings. (D.I. 11, 12, 15).

### I. BACKGROUND

This is an insurance coverage case. Plaintiff Yankees Entertainment and Sports Network LLC is insured under a Special Multi-Flex Policy ("the Policy") issued by Defendant Hartford Fire Insurance Company for the period of August 29, 2019 through August 29, 2020. (D.I. 1-1, Ex. A at pp. 47-146). The case arises out of Hartford's denial of Yankees's claim for coverage of business losses Yankees allegedly incurred as a result of the COVID-19 pandemic. (*See generally* D.I. 8).

Yankees is a "regional sports television network" chiefly focused on broadcasting games and team-related programs involving the New York Yankees, the Brooklyn Nets, the New York Liberty, and the New York City FC. (*Id.* at 1-2). Although Yankees "primarily serves New York City, New York, and the surrounding areas" (*id.* at 1), its viewership "spans the United States"

1

(*id.* at 8). Yankees's principal place of business is New York, but it is a Delaware LLC and all of its members are business entities formed under Delaware law. (*Id.* at 5). Hartford has asserted that complete diversity of citizenship exists (D.I. 1 at 2-3), but it cannot presently be determined whether that assertion is correct (D.I. 18).

Hartford is a Connecticut corporation with its principal place of business in—unsurprisingly—Hartford, Connecticut. (D.I. 8 at 5). Hartford has both initiated and been subject to actions in Delaware federal and state courts (*see, e.g.*, D.I. 12 at 1-2 (collecting cases)), and at least one such lawsuit brought against Hartford is a coverage dispute over COVID-19-related business losses. (*See id.* at 12).

The Policy was negotiated between Yankees's broker, whose business address is in Tampa, Florida, and a Hartford underwriter located in Hartford, Connecticut. (*See* D.I. 1-1, Ex. 1 at p. 148). In brief, the Policy insures against losses to property located at seven "Insured Premises," five of which are located in New York City, and two of which are located in Connecticut and Florida. (D.I. 11, Ex. A). Yankees alleges that Hartford has breached and continues to breach its obligations under the Policy by failing to cover losses Yankees incurred "in nearly all aspects of its business" as a result of the "impacts of the COVID-19 pandemic and the resulting closure orders." (D.I. 8 at 31). According to Yankees, because the pandemic's impacts "were not limited to New York," but rather "affected every city" where the relevant sports teams play—and because Yankees broadcasts to numerous other jurisdictions throughout the country—Yankees's covered business losses "span the nation." (*Id.* at 31-32).

2

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a case based on the court's lack of personal jurisdiction over that party. When reviewing a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Turner v. Prince George's County Public Schools*, 694 F. App'x 64, 66 (3d Cir. 2017). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

In the absence of consent, personal jurisdiction exists if two requirements are satisfied. First, there must be a statutory basis for jurisdiction pursuant to Delaware's long-arm statute. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Second, the exercise of jurisdiction over the defendant must comport with the Due Process Clause of the Fourteenth Amendment. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 315 (1945). Delaware's long-arm statute "has been broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). However, the personal jurisdictional

3

analysis "must not be collapsed into a single constitutional inquiry." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 370 n. 3 (D. Del. 2008).

## III. DISCUSSION

### A. Lack of Personal Jurisdiction

#### 1. Consent to Jurisdiction

Yankees argues that Hartford implicitly consented to the jurisdiction of this court by virtue of its involvement in other Delaware litigation. (D.I. 12 at 11-12). Because the personal jurisdiction requirement is based on individual liberty interests protected by the Due Process Clause, it can, like other such rights, be waived by any legal arrangement that demonstrates a party's expressed or implied consent to that jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-04 (1982). Determining whether a corporation consented to the personal jurisdiction of the courts of a particular state is a matter to be determined by examination of the law of that state. *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572, 584 (D. Del. 2015), *aff'd*, 817 F.3d 755 (Fed. Cir. 2016).

Under Delaware law, a party can be considered to have consented to jurisdiction by "instituting another, related suit" that has "some logical relationship" to the present suit. *Foster Wheeler Energy Co. v. Metallgesellschaft AG,* 1993 WL 669447, at *1, 4 (D. Del. Jan. 4, 1993). Generally, Delaware courts have found that a logical relationship exists where there are parallel suits between identical parties. *See, e.g., id.* at *4 (defendant impliedly consented to jurisdiction in Delaware after previously procuring a dismissal of same claim in parallel suit brought by plaintiff). Prior litigation lacking such a relationship has generally been insufficient to constitute implied consent to jurisdiction. *See, e.g., Funai Electric Co. v. Personalized Media Communications, LLC*, 2016 WL 370708, at *3 (D. Del. Jan. 29, 2016) (no implied consent

4

where defendant previously filed two earlier patent-infringement suits in Delaware against parties lacking "logical relationship" to parties in second suit).

Here, there is no indication that any of Hartford's Delaware lawsuits that Yankees has compiled bear a sufficiently close relationship to this case. Yankees's reliance on one such lawsuit, *The Band's Visit Nat'l Tour v. Hartford Fire Ins. Co.*, No. N22C-03-048 (Del. Mar. 4, 2022), is inapposite. That case, which was brought against Hartford by "touring musical productions" seeking coverage for alleged COVID-19-related business losses, involved different plaintiffs and different underlying facts. For example, those plaintiffs held distinct specialized insurance policies that are not at issue here (*see* D.I. 15 at 9), and Yankees has failed to establish that there is any sort of relationship—let alone a logical relationship—between those plaintiffs and itself.

Yankees contends that Hartford's involvement in *The Band's Visit* should nevertheless constitute consent because *The Band's Visit* involved "these very types of claims" (i.e., COVID-19 coverage issues). (D.I. 12 at 12). Yankees's only support for this theory is its effort to distinguish *Beaton v. LG Chem, Ltd.*, 2021 WL 3828835 (D.N.J. Aug. 26, 2021). There, the court held that a manufacturer had not consented to personal jurisdiction in a forum where it had previously initiated litigation, in part because the prior litigation involved different issues— patent infringement claims rather than product liability claims. *Id.* at *5. According to Yankees, *Beaton* supports the view that where the issues are the same, consent exists. (D.I. 12 at 11).

This argument fails for two reasons. First, I agree with Hartford that *Beaton* "at most" suggests that "a party that **affirmatively** seeks to litigate an issue in a state's courts waives future jurisdictional challenges to lawsuits filed in the state that raise the same issue." (D.I. 15 at 8)

5

(emphasis in original). Hartford, however, has not done that here. Unlike the manufacturer in *Beaton*, which had affirmatively sought to litigate the prior disputes in the forum, Hartford had no control over the forum in *The Band's Visit*. The complaint in that case had been filed against Hartford. (*Id.*). Second, the *Beaton* court cited an additional reason for its consent holding. The prior lawsuits at issue there involved different parties. *Beaton*, 2021 WL 3828835, at *5. Such is the case here as well.

I therefore conclude that Hartford has not consented to the personal jurisdiction of this court.

### 2. Specific Jurisdiction Pursuant to Delaware's Long-arm Statute

Yankees argues that that the court may exercise specific jurisdiction over Hartford pursuant to § 3104(c)(1)[1] of Delaware's long-arm statute, 10 Del. C. § 3104(c). (D.I. 12 at 5-6). The Delaware long-arm statute is "broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992). Delaware law, however, does not teach that the statutory and constitutional steps should be collapsed into a single analysis. *ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 147 F. Supp. 2d 268, 271 n.4 (D. Del. 2001). I therefore examine the application of the long-arm statute and only turn to the constitutional analysis should it be necessary.

Delaware's long-arm statute provides as follows:

---

[1] In its answering brief, Yankees states that § 3104(c)(6) provides an additional and independent means for the court to exercise specific jurisdiction. (D.I. 12 at 6). Yankees does not cite any authority for this proposition, nor does it offer any response to Hartford's arguments with respect to that provision. Yankees centers its argument on § 3104(c)(1). Accordingly, so do I.

6

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> (2) Contracts to supply services or things in this State;
>>
>> (3) Causes tortious injury in the State by an act or omission in this State;
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>>
>> (5) Has an interest in, uses or possesses real property in the State; or
>>
>> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The foregoing provisions are construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del. Super. 1997). Sections 3104(c)(1-3), (5), and (6) have been interpreted as specific jurisdiction provisions, while § 3104(c)(4) confers general jurisdiction. *Devicor Medical Products, Inc. v. Biopsy Sciences, LLC,* 2013 WL 486638, *5 (D. Del. Feb. 7, 2013).

Under § 3104(c)(1), specific personal jurisdiction is proper over any nonresident who, in person or through an agent, "[t]ransacts any business" in the State, so long as the claims in question "aris[e] from" that transaction of business. 10 Del. C. § 3104(c)(1). The transaction need not be continuous; "even a single transaction is sufficient if the claim has its origin in the asserted transaction." *Uribe v. Maryland Auto. Ins. Fund,* 2015 WL 3536574, at *4 (Del. May 21, 2015) (internal citations omitted).

Yankees contends that Hartford has transacted business in Delaware because Hartford has "[sold] property insurance policies covering risks for Delaware companies formed under the laws of the state of Delaware," collected premiums from those insureds, voluntarily litigated other cases in Delaware, and denied coverage for the business losses that Yankees allegedly suffered due to its inability to broadcast its programming nationwide, including to subscribers in Delaware. (*See* D.I. 12, 5-6). On all these theories, Yankees swings and misses.

Hartford's issuance of policies to third-party entities formed under Delaware law is not "transact[ing] business" under subsection (c)(1). Simply "doing business" in a forum state is not enough to satisfy that prong. *Cf. Eaton v. Allstate Prop. & Cas. Ins. Co.*, 2021 WL 3662451, at *1 (Del. Super. Apr. 28, 2021) (granting insurance company's motion to dismiss for lack of personal jurisdiction because selling other insurance policies in Delaware is insufficient to confer general jurisdiction in Delaware); *Rosado v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 3887880, at *2 (Del. Super. July 9, 2020) (same). Because Yankees's cause of action does not "aris[e] from" contacts with unrelated third parties, this argument fails.

So does Yankees's argument that Hartford transacted business in Delaware by "voluntarily litigating" here. (D.I. 12 at 5). Filing an action in Delaware constitutes a business transaction for the purposes of subsection (c)(1). *Gould v. Gould*, 2011 WL 141168, at *8 (Del. Ch. Jan. 7, 2011). Earlier filings fail the "arising from" requirement, however, when the parties and underlying factual contexts involved are sufficiently different from and independent of those in the action at issue. *See Uribe*, 2015 WL 3536574, at *4 (defendant's earlier filings in Delaware of several unrelated insurance suits does not meet subsection (c)(1) "arising out of" requirement); *see also Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *9 (Del. Ch. July

8

14, 2008) (second action did not "arise from" earlier action, despite the fact that the earlier action involved the same contracts, provisions, and parties, because the earlier action involved distinct underlying facts). Here, Yankees is not a party in any of the earlier actions that it has cited, and Yankees has not showed that the facts in those cases relate to those in the case at bar. Indeed, the only such case that Yankees discusses in its opposition brief is *The Band's Visit*, in which Hartford was the defendant. (D.I. 12 at 12). As explained above in the context of consent to jurisdiction, although that case involves a similar coverage dispute, Yankees has failed to demonstrate any logical or causal relationship between that action and this one. Thus, Hartford's other litigation in Delaware does not satisfy subsection (c)(1).

Yankees's final argument, that Hartford transacted business in Delaware by entering into the specific insurance agreement at issue here, is unavailing. As I understand it, this argument has two components. First, Yankees suggests that its own status as a Delaware LLC renders the Policy a business transaction "in" Delaware for the purposes of subsection (c)(1). (*See* D.I. 12 at 5, 10). Delaware courts have rejected attempts to satisfy subsection (c)(1) based upon little more than a contract partner's status as a Delaware company or resident. *See, e.g.*, *Zausner Foods Corp. v. ECB USA, Inc.*, 2022 WL 609110, at *8 (D. Del. Jan. 31, 2022); *Fischer v. Hilton*, 549 F. Supp. 389, 391 (D. Del. 1982) (defendant did not "transact business" in Delaware by entering a contract with a Delaware resident when that contract was, aside from two telephone calls, negotiated and executed out-of-state). As the *Fischer* court explained, subsection (c)(1)

9

"requires some action by the defendant occurring in the State of Delaware." *Id.* The bare fact that Yankees is a Delaware LLC is therefore insufficient to satisfy subsection (c)(1).[2]

Second, Yankees contends that the requisite actions that Hartford has taken "in" Delaware are established by the fact that Yankees's business losses—which it alleges the Policy covered— "extend to the numerous jurisdictions where [the Yankees, Nets, Liberty, and New York City Football Club] play and where Yankees broadcasts, including Delaware." (D.I. 12 at 10). This argument proves too much. When taken to its logical conclusion, it would establish personal jurisdiction over Hartford in any state from which Yankees derives revenue—and according to Yankees, those states "span the nation." (D.I. 12 at 16). I agree with Hartford that "[Yankees] cannot rely on its own business activities . . . to demonstrate that *Hartford* has transacted business in Delaware." (D.I. 15 at 4); *see Walden v. Fiore*, 571 U.S. 277, 285-86 (2014).

To prove that Hartford has transacted business in Delaware, a plaintiff must point to some relevant action that the defendant—not the plaintiff—has taken within the state of Delaware. Yankees has not done so. "[C]ontracting with or transacting business with a Delaware corporation is insufficient to support personal jurisdiction, absent facts . . . that, at a minimum,

---

[2] Yankees argues that it should be permitted to obtain limited jurisdictional discovery "to determine the extent of Hartford's knowledge of Yankees's connections to Delaware, including any knowledge obtained during the underwriting process." (D.I. 12 at 10, n.5). The Supreme Court has held that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978). Unless a plaintiff's claim is "clearly frivolous," jurisdictional discovery should be allowed. Toys "R" Us Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).
 Here, no information obtained through the requested discovery would lead me to deny Hartford's motion. Even if Yankees could establish these facts, they would be irrelevant to the subsection (c)(1) analysis. Because Yankees's status as a Delaware LLC is, for the reasons explained above, unrelated to Yankees's claims in this case, Hartford's knowledge of that fact is immaterial. Thus, I will deny Yankees's request for jurisdictional discovery.

establish that the performance of the contract/transaction took place in Delaware." *Zausner Foods*, 2022 WL 609110, at *9. Here, the Policy at issue was negotiated and executed out-of-state (D.I. 1-1, Ex. 1 at pp. 148), the coverage it provides is tied to premises located outside of Delaware (D.I. 1-1, D.I. 11, Ex. A), and the Policy does not specify any other locations from which Yankees derives revenue. Yankees has not argued that any other meaningful connections between the Policy and the state of Delaware exist.[3] Thus, I conclude that Yankees has not established that Hartford has "transacted business" in this state within the meaning of § 3104(c)(1).

In conclusion, Yankees has not demonstrated that its claims arise out of Hartford's transaction of business in this state as required by Delaware's long-arm statute. Because this court cannot exercise personal jurisdiction over Hartford pursuant to Delaware's long-arm statute, I do not need to consider Hartford's constitutional right to due process.

**B.     Transfer**

Having found that this court lacks personal jurisdiction over Hartford does not, however, end the matter. Hartford has argued that, even if this court does exercise personal jurisdiction over Hartford, the case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (D.I. 10). Because I have found that personal jurisdiction over Hartford does not exist,

---

[3] Yankees also seeks jurisdictional discovery "to determine Hartford's own connections to Delaware, such as real estate owned or leased in the State, employees and agents in the State, non-premium income sources from Delaware, advertisements directed to Delaware, and traffic on Hartford's website or apps originating from Delaware." (D.I. 12 at 12-13).
My decision would not change even if such connections existed. They would nevertheless fail to give rise to jurisdiction under subsection (c)(1), as they would lack the necessary nexus with Yankees's claims. Thus, I will deny this request as well.

11

however, venue is improper, and § 1404(a) is therefore inapplicable. The parties have not argued transfer under other potentially applicable statutes, such as 28 U.S.C. § 1406(a), and have not attempted to make any showing that the interests of justice favor transfer as opposed to dismissal.

## III.  CONCLUSION

For the reasons stated above, I conclude that Yankees has failed to demonstrate that personal jurisdiction exists over Hartford, I deny Yankees's request for jurisdictional discovery, and I dismiss Yankees's claims without prejudice.

An appropriate order will follow.

*/s/ Richard G. Andrews*
United States District Judge